IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| BRIAN DALE LARSEN,<br><br>                Petitioner,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>                Respondent. | MEMORANDUM DECISION AND ORDER DENYING MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE BY A PERSON IN FEDERAL CUSTODY<br><br>Civil Case No. 1:18-CV-12 TS<br>Criminal Case No. 1:15-CR-101 TS<br><br>District Judge Ted Stewart |

This matter is before the Court on Petitioner's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody. For the reasons discussed below, the Court will deny the Motion and dismiss this case.

I. BACKGROUND

Petitioner was originally charged in a four-count Indictment on December 23, 2015. The Indictment charged him with possession of methamphetamine with intent to distribute, possession of heroin with intent to distribute, possession of a firearm in furtherance of a drug trafficking crime, and felon in possession of firearms and ammunition. A Superseding Indictment was filed on February 3, 2016, which included the same charges.

On July 21, 2016, Petitioner pleaded guilty to possession of methamphetamine with intent to distribute. That charge carried a minimum mandatory sentence of ten years, with a maximum possible penalty of up to life. In exchange for his guilty plea, the government agreed to dismiss the remaining counts and forego the filing of a sentencing enhancement under 21 U.S.C. § 851. Additionally, the government agreed to recommend a sentence within the

1

guideline range determined by the Court. Petitioner agreed to waive certain appeal rights and also agreed to the forfeiture of specific property.

Petitioner proceeded to sentencing on January 4, 2017. The Presentence Report ("PSR") calculated Petitioner's guideline range as 188 to 235 months. Prior to sentencing, Petitioner's counsel filed a document entitled Position Regarding Sentencing and Motion for Downward Departure and/or Variance. In that filing, counsel requested the Court impose the mandatory minimum sentence of ten years. At sentencing, the Court declined this request and sentenced Petitioner to a low-end sentence of 188 months.

Petitioner filed a pro se notice of appeal on January 10, 2017. The Tenth Circuit Court of Appeals appointed the Federal Public Defender to represent him on appeal. On appeal, Petitioner challenged whether the guidelines were properly calculated and whether his sentence was reasonable. The government moved to enforce the appeal waiver contained in his plea agreement. The Tenth Circuit agreed and dismissed the appeal. Petitioner timely filed the instant Motion.

## II. DISCUSSION

Petitioner's Motion raises five claims of ineffective assistance of counsel. Petitioner argues that counsel was ineffective for: (1) failing to challenge a breach of the plea agreement; (2) coercing Petitioner into an unknowing and involuntary plea; (3) failing to seek a mental health evaluation and failing to introduce it as mitigation evidence at sentencing; (4) failing to properly challenge the imposition of a sentencing enhancement; and (5) failing to perfect the appeal. Before reaching the merits of these claims, however, the Court must address the

government's contention that claims three through five are barred by the collateral appeal waiver contained in Petitioner's plea agreement.

A.     COLLATERAL APPEAL WAIVER

As part of his plea agreement, Petitioner agreed to waive his ability to bring a collateral attack as follows:

> I also knowingly, voluntarily, and expressly waive my right to challenge my sentence, and the manner in which the sentence is determined, in any collateral review motion, writ or other procedure, including but not limited to a motion brought under 28 U.S.C. § 2255, except on the issue of ineffective assistance of counsel.[1]

The government argues that this wavier bars Petitioner's third, fourth, and fifth claims. The Court disagrees.

The Tenth Circuit has established a three-part test based upon contract principles to interpret appeal waivers.[2] The Court is to consider "(1) whether the disputed appeal falls within the scope of the waiver of appellate rights; (2) whether the defendant knowingly and voluntarily waived his appellate rights; and (3) whether enforcing the waiver would result in a miscarriage of justice."[3]

"In determining the scope of waiver, we apply principles of contract law and examine the plain language of the plea agreement."[4] However, the Court "strictly construe[s] the scope of the

---

[1] Case No. 1:15-CR-101 TS, Docket No. 35 ¶ 12(g)(2).

[2] *United States v. Hahn*, 359 F.3d 1315, 1324–25 (10th Cir. 2004) (*en banc*) ("[C]ontract principles govern plea agreements.").

[3] *United States v. Porter*, 405 F.3d 1136, 1142 (10th Cir. 2005) (quoting *Hahn*, 359 F.3d at 1325).

[4] *United States v. Pam*, 867 F.3d 1191, 1201 (10th Cir. 2017).

3

waiver and interpret[s] any ambiguities against the government and in favor of [Petitioner's] collateral attack rights."[5]

The government argues that the collateral appeal waiver here limits Petitioner's ability to bring ineffective assistance of counsel claims to only those claims involving challenges to the validity of the plea or the waiver. Because Petitioner's third, fourth, and fifth claims do not involve challenges to the validity of the plea or waiver, the government argues they are barred by the wavier. However, the language of the agreement is not as limiting as the government would suggest. The plea agreement specifically allows Petitioner to bring § 2255 claims for ineffective assistance of counsel. There is no language restricting the types of ineffective assistance claims Petitioner may bring. While the plea agreement could have limited Petitioner's ability to bring ineffective assistance claims relating only to the validity of the plea or waiver,[6] it did not do so. Because Petitioner only asserts ineffective assistance claims and those claims are not covered by the collateral appeal wavier, the Court finds that none of Petitioner's claims are barred.

B. INEFFECTIVE ASSISTANCE OF COUNSEL

The Supreme Court has set forth a two-pronged test to guide the Court in making a determination of ineffective assistance of counsel. "To demonstrate ineffectiveness of counsel, [Petitioner] must generally show that counsel's performance fell below an objective standard of

---

[5] *Id.*

[6] *See United States v. Cockerham*, 237 F.3d 1179, 1187 (10th Cir. 2001) (holding "that a plea agreement waiver of postconviction rights does not waive the right to bring a § 2255 petition based on ineffective assistance of counsel claims challenging the validity of the plea or the waiver").

reasonableness, and that counsel's deficient performance was prejudicial."[7] To establish prejudice, Petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[8]

A court is to review Petitioner's ineffective-assistance-of-counsel claim from the perspective of his counsel at the time he or she rendered the legal services, not in hindsight.[9] In addition, in evaluating counsel's performance, the focus is not on what is prudent or appropriate, but only what is constitutionally compelled.[10] Finally, "[t]here is a strong presumption that counsel provided effective assistance, and a section 2255 defendant has the burden of proof to overcome that presumption."[11]

### 1. Breach of the Plea Agreement

Petitioner first argues that his counsel was ineffective for failing to challenge a breach of the plea agreement. Petitioner states that his counsel told him that the plea offer from the government was for 144 months on Count One and there would be no enhancements. However, Petitioner received a sentence of 188 months. Based upon this, Petitioner asserts either: (1) the government breached the plea agreement; or (2) such an agreement never existed and his attorney misled him.

---

[7] *United States v. Lopez*, 100 F.3d 113, 117 (10th Cir. 1996) (citing *Strickland v. Washington*, 466 U.S. 668, 687, 690 (1984)).

[8] *Strickland*, 466 U.S. at 694.

[9] *Hickman v. Spears*, 160 F.3d 1269, 1273 (10th Cir. 1998).

[10] *United States v. Cronic*, 466 U.S. 648, 665 n.38 (1984).

[11] *United States v. Kennedy*, 225 F.3d 1187, 1197 (10th Cir. 2000) (quoting *United States v. Williams*, 948 F. Supp. 956, 960 (D. Kan. 1996)).

"In interpreting a plea agreement, we rely on general principles of contract law."[12] To determine whether a breach has occurred, the Court must "look to the express language in the agreement to identify both the nature of the government's promise and the defendant's reasonable understanding of this promise at the time of the entry of the guilty plea."[13]

Turning first to the express language of the agreement, there is no reference to an agreement that Petitioner would receive or the government would recommend a sentence of 144 months. The agreement does state that, in exchange for Petitioner pleading guilty to Count One, the government agreed to dismiss the remaining counts. The government also agreed to forego filing an enhancement under 21 U.S.C. § 851. However, the government did not agree to a sentence of 144 months. Rather, the government agreed "to recommend at sentencing that [Petitioner] be sentenced to a term of incarceration within the Sentencing Guideline range determined by the Court."[14]

Petitioner's understanding of the plea agreement can be found in the plea agreement and his statements at the change of plea hearing. The plea agreement informed Petitioner that the maximum possible penalty was a term of imprisonment of up to life and a minimum mandatory sentence of ten years. Petitioner acknowledged that "the final calculation of my sentence by the Court may differ from any calculation the United States, my attorney, or I may have made, and I will not be able to withdraw my plea if this occurs."[15] Petitioner further stated:

---

[12] *United States v. Rodriguez-Rivera*, 518 F.3d 1208, 1212 (10th Cir. 2008).

[13] *Id.* at 1212–13 (quoting *United States v. VanDam*, 493 F.3d 1194, 1199 (10th Cir. 2007)).

[14] Case No. 1:15-CR-101 TS, Docket No. 35 ¶ 12(f).

[15] *Id.* ¶ 3.

6

> This Statement in Advance contains all terms of the agreements between me and the government; if there are exceptions, the Court will be specifically advised, on the record, at the time of my guilty plea of the additional terms. I understand the government and I cannot have terms of this plea agreement[] that are not disclosed to the Court.
> No one has made threats, promises, or representations to me that have caused me to plead guilty, other than the provisions set forth in this agreement.
> Neither my attorney nor the government has promised me that I would receive probation or any other form of leniency because of my plea.
> ****
> My decision to enter this plea was made after full and careful thought; with the advice of counsel; and with a full understanding of my rights, the facts and circumstances of the case and the consequences of the plea.[16]

At the change of plea hearing, Petitioner confirmed that he read "each and every sentence of [the plea] agreement" and had a sufficient opportunity to review it with his attorney.[17] Petitioner was asked whether there "[w]ere any promises made to you that were not put in the written Plea Agreement."[18] Petitioner stated, "No."[19] When asked whether anyone had threatened or coerced him into pleading guilty, Petitioner similarly stated, "No."[20] The maximum possible penalties were explained to Petitioner. Petitioner was informed that the Court would calculate and determine his sentence under the Sentencing Guidelines and federal law. Petitioner was also informed "that the sentencing judge's calculations might differ from [his] attorney's or the prosecutor's" but, even if this was the case, he would not be allowed to

---

[16] *Id.* at 7.

[17] Case No. 1:15-CR-101 TS, Docket No. 68, at 3:25–4:5.

[18] *Id.* at 4:6–7.

[19] *Id.* at 4:8.

[20] *Id.* at 4:9–11.

7

withdraw his plea.[21] After being given an opportunity to ask his attorney any questions, Petitioner pleaded guilty.

Based upon this evidence, the Court concludes that counsel was not ineffective in failing to object to a breach of the plea agreement because there was no such breach. The express language of the plea agreement contains no agreement for the government to recommend or the Court impose a sentence of 144 months. Further, Petitioner stated, both in the plea agreement and under oath in open court, that no other promises were made to him. Petitioner's conclusory statement that his counsel informed him that the deal was for 144 months does not overcome this evidence. "Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal . . . ."[22] The "truth and accuracy" of a defendant's statements during a plea hearing "should be regarded as conclusive in the absence of a believable, valid reason justifying the departure from the apparent truth of his Rule 11 statements."[23] Because Petitioner's conclusory, self-serving statements are contradicted by the record, this claim must fail.

2. *Unknowing and Involuntary Plea*

Alternatively, Petitioner argues that his counsel coerced an unknowing and involuntary plea. "[T]he two-part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel."[24] To satisfy the first prong, Petitioner must show "that the attorney's conduct did not fall within the wide range of competence demanded of attorneys in

---

[21] *Id.* at 5:12–15.

[22] *Blackledge v. Allison*, 431 U.S. 63, 74 (1977).

[23] *Hedman v. United States*, 527 F.2d 20, 22 (10th Cir. 1975) (per curiam).

[24] *Hill v. Lockhart*, 474 U.S. 52, 58 (1985).

8

criminal cases."[25] To satisfy the prejudice requirement, Petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."[26]

"A plea may be involuntary when an attorney 'materially misinforms the defendant of the consequences of the plea or the court's probable disposition.'"[27] However, "an erroneous estimate of sentence does not render the plea involuntary."[28] For substantially the same reasons set forth above, the Court cannot find that Petitioner's plea was involuntary or unknowingly entered. The record clearly demonstrates that Petitioner knowingly and voluntarily entered his guilty plea. Petitioner's claim that he was coerced into pleading guilty because of counsel's statement that the offer was for 144 months is simply not supported by the record and, indeed, is contradicted by it.

Moreover, there is no evidence that, but for counsel's alleged errors, Petitioner would have pleaded not guilty and would have insisted on going to trial. Nowhere in his Motion or supporting declaration does Petitioner state that he would have gone to trial. Even if he had made such a statement, it would fail. Both the plea agreement and the colloquy at the change of plea hearing made clear to Petitioner that there was no agreement that he would be sentenced to 144 months. Despite being so informed, Petitioner pleaded guilty. Given the fact that Petitioner

---

[25] *United States v. Carr*, 80 F.3d 413, 417 (10th Cir. 1996).

[26] *Hill*, 474 U.S. at 59.

[27] *United States v. Rhodes*, 913 F.2d 839, 843 (10th Cir. 1990) (quoting *Laycock v. State of N.M.*, 880 F.2d 1184, 1186 (10th Cir. 1989)).

[28] *Id.*

still pleaded guilty, he cannot demonstrate that he would have insisted on going to trial.[29] Indeed, there are good reasons why Petitioner would plead guilty even without a promise of a sentence of 144 months. Petitioner faced a maximum possible penalty of up to life for Count One. In addition to this charge, Petitioner faced three other charges, one of which carried a statutorily required term of imprisonment. He also faced the prospect of having an enhancement under 21 U.S.C. § 851 filed against him. Therefore, Petitioner has failed to show prejudice and cannot prevail on this claim.

       *3.      Mental Health Evaluation*

Petitioner states that he suffers from several mental health issues, some of which are the result of his father being killed by law enforcement. Petitioner argues that his counsel was ineffective for failing to further develop the record on this issue. Petitioner believes that having a psychological assessment would have mitigated the sentence the Court ultimately imposed.

The Court cannot conclude that counsel's performance was deficient in failing to seek a mental health evaluation or further developing the record on Petitioner's mental health issues. The PSR noted that Petitioner's father was shot and killed by law enforcement. The PSR further reported that Petitioner suffered from head injuries as a child and as an adult, and stated that his family believed that he suffered from brain damage. The PSR further stated that prison records revealed that Petitioner was diagnosed with anxiety disorder and ADHD.

---

[29] *United States v. Gordon*, 4 F.3d 1567, 1571 (10th Cir. 1993) ("Given the fact that Defendant pleaded guilty even after being so informed by the court, his mere allegation that, but for original counsel's failure to inform him about the use of relevant conduct in sentencing, he would have insisted on going to trial, is insufficient to establish prejudice.").

In the Position Regarding Sentencing and Motion for Downward Departure and/or Variance, Petitioner's counsel provided further detail of Petitioner's mental health issues. Counsel argued that Petitioner was "a long-time addict with a troubled childhood, a probable brain injury, and inadequate social skills in an effort to ingratiate himself with others was taken advantage of by criminal acquaintances and found himself involved in the distribution of methamphetamine."[30] Counsel described Petitioner's difficult childhood, the trauma caused by the death of Petitioner's father, the head injuries Petitioner suffered, and his possible brain injury. Counsel also discussed Petitioner's struggle with addiction and the deleterious effect the use of controlled substances had on Petitioner's life. Based upon these and other considerations, counsel requested the statutory minimum of ten years. Counsel argued that "[t]his sentence will provide deterrence, public protection, respect for the law, and punishment while still appropriately recognizing the mitigating circumstances at issue here."[31] Counsel reiterated these points at the sentencing hearing.

Based upon this, the Court cannot conclude that counsel's performance was deficient. Counsel brought Petitioner's mental health issues to the attention of the Court. He argued that those issues, along with a number of other factors, warranted a lesser sentence. Ultimately, the Court disagreed with the recommendation to sentence Petitioner at the statutory minimum sentence. But the Court also disagreed with the government's recommendation to sentence Petitioner at the high-end of the guideline range. While counsel could have certainly done more, his performance was not constitutionally deficient.

---

[30] Case No. 1:15-CR-101 TS, Docket No. 45, at 2.

[31] *Id.* at 11.

Even assuming counsel's performance was deficient, Petitioner has failed to demonstrate a reasonable probability that his sentence would have been different had counsel done more. Petitioner states, in a conclusory fashion, that he believes that a psychological assessment would have mitigated the sentence ultimately imposed. However, he fails to identify any information that would have been contained in that assessment that was not already before the Court. Petitioner merely states that he suffers from several mental health issues, some of which were brought on by his father's death. However, counsel provided this information to the Court. As a result, not only was counsel's performance not deficient, Petitioner has failed to demonstrate prejudice.

    *4.*    *Sentencing Enhancement*

The PSR contained a two-level enhancement for obstruction of justice. Petitioner argues that his counsel was ineffective in failing to challenge the inclusion of this enhancement.

Section 3C1.1 of the 2015 Guidelines states:

> If (1) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (2) the obstructive conduct related to (A) the defendant's offense of conviction and any relevant conduct; or (B) a closely related offense, increase the offense level by 2 levels.[32]

The Commentary provides examples of obstructive conduct, including "destroying or concealing or directing or procuring another person to destroy or conceal evidence that is material to an official investigation or judicial proceeding . . . or attempting to do so."[33] The Presentence Reported noted that, after his arrest, Petitioner called an individual who was living at

---

[32] United States Guidelines Manual § 3C1.1 (2015 ed.).

[33] *Id.* § 3C1.1, Application Note 4(D).

his home. Petitioner instructed this person to get rid of additional evidence that police had not found during the execution of the search warrant. Subsequently, officers went to the home and found a bag containing methamphetamine residue in the garbage.

Petitioner does not challenge these facts in the present Motion. Petitioner appears to believe that the enhancement was applied because he committed perjury. However, that is not the case. Without some showing that the facts in the PSR were incorrect, Petitioner has failed to provide a basis to conclude that his counsel was ineffective for failing to object. Therefore, this claim fails.

5. *Perfecting an Appeal*

Petitioner's final argument is that his original counsel was ineffective in failing to perfect an appeal. Petitioner argues that his first three claims were not barred by the appeal waiver and should have been addressed on direct appeal.

This argument fails on the prejudice prong for two reasons. First, Petitioner was able to file an appeal and was appointed counsel. Petitioner's appointed counsel was able to perfect the appeal, though the appeal was later dismissed as being barred by the appeal waiver. Second, Petitioner has failed to show that there is a reasonable probability that any of the claims he believes should have been raised would have resulted in a reversal on appeal.

"[I]t is difficult to establish a claim of ineffective assistance of appellate counsel based on a failure to raise a particular issue on appeal."[34]

> The Sixth Amendment does not require an attorney to raise every nonfrivolous issue on appeal. Consequently, appellate counsel engage in a process of winnowing out weaker arguments on appeal and focusing on those more likely to

---

[34] *United States v. Parada*, 555 F. App'x 763, 766 (10th Cir. 2014).

prevail. The weeding out of weak claims to be raised on appeal is the hallmark of effective advocacy, because every weak issue in an appellate brief or argument detracts from the attention a judge can devote to the stronger issues, and reduces appellate counsel's credibility before the court. Consequently, appellate counsel will frequently remain above an objective standard of competence and have caused her client no prejudice for the same reason—because she declined to raise a weak issue.[35]

When the basis of a claim for ineffective assistance of counsel is the failure by appellate counsel to raise an issue on appeal, "we must look to the merits of the omitted issue."[36] Petitioner may meet his burden if he can show "a reasonable probability that the omitted claim would have resulted in a reversal on appeal."[37] "If the omitted issue is without merit, then counsel's failure to raise it is not prejudicial, and thus is not ineffective assistance."[38]

Petitioner argues that his first, second, and third claims would not have been barred by the appeal waiver and should have been addressed on direct appeal. To the extent that Petitioner sought to assert claims of ineffective assistance on direct appeal, the Tenth Circuit has consistently held that "[i]neffective assistance of counsel claims should be brought in collateral proceedings, not on direct appeal."[39] Such claims are "presumptively dismissible, and virtually all will be dismissed."[40] Further, as discussed above, Plaintiff's claims, and their underlying factual basis, are without merit. Therefore, there is no reasonable probability that any issue that was not raised would have resulted in reversal, and Petitioner's claim fails.

---

[35] *United States v. Cook*, 45 F.3d 388, 394–95 (10th Cir. 1995) (citations and internal quotation marks omitted), *abrogated on other grounds*, *Neill v. Gibson*, 278 F.3d 1044, 1057 n.5 (10th Cir. 2001).

[36] *United States v. Orange*, 447 F.3d 792, 797 (10th Cir. 2006).

[37] *Neill*, 278 F.3d at 1057 n.5.

[38] *Orange*, 447 F.3d at 797.

[39] *United States v. Galloway*, 56 F.3d 1239, 1240 (10th Cir. 1995).

[40] *Id.*

## III.  CONCLUSION

It is therefore

ORDERED that Petitioner's Motion Pursuant to 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Docket No. 1 in Case No. 1:18-CV-12 TS) is DENIED.  It is further

ORDERED that, pursuant to Rule 8(a) of the Rules Governing § 2255 Cases, an evidentiary hearing is not required.  It is further

ORDERED that pursuant to Rule 11(a) of the Rules Governing § 2255 Cases, the Court DENIES Petitioner a certificate of appealability.

DATED this 12th day of June, 2018.

BY THE COURT:

Ted Stewart
United States District Judge